UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOUGH GUY LIMITED, | Case No. 2:10-CV-01468 JAM-JFM |
| Plaintiff, | ORDER TRANSFERRING VENUE TO THE EASTERN DISTRICT OF NEW YORK |
| v. | |
| TOUGH MUDDER LLC, WILL DEAN, and GUY LIVINGSTONE, | |
| Defendants. | |

This matter comes before the Court on its sua sponte decision to transfer venue from the Eastern District of California to the Eastern District of New York.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2008, Defendant Will Dean ("Dean"), a student at Harvard Business School in Cambridge, Massachusetts, contacted William Wilson ("Wilson"), founder of Tough Guy Limited ("Plaintiff"), located in England, and told him that he was conducting a field study for course credit regarding various races conducted around the world. Dean intended to analyze the

feasibility and logistics of establishing Tough Guy in the United States. Wilson agreed to assist Dean and to provide information about his business if such information was not disclosed to parties unrelated to the Harvard field study or utilized for any commercial purpose.

On October 2, 2008 Dean traveled to the United Kingdom to meet Wilson in person. Wilson presented Dean with a written confidentiality agreement, which Dean signed. The agreement stated that Dean "would not use for any commercial end whatsoever, or disclose to any person connected with Dean's Harvard field study, the information regarding Tough Guy." Complaint ¶ 15.

Plaintiff alleges that Wilson provided Dean with information about his business such as competitor demographics; financial breakdowns of income and expenditure; history of expressed media interest and actual media exposure; web and media statistics; and site layout and costs.

In or about January 2009, Dean presented Plaintiff with a copy of a Harvard Business School field study report entitled "Tough Guy – Evaluating the US/International Opportunity." The Complaint alleges that following the completion of the report, Dean ceased communications with Plaintiff.

In February 2009, Dean, with his business partner Guy Livingstone ("Livingstone"), allegedly began marketing, promoting, and advertising a series of races called "Tough Mudder" via a retail website and popular social networking sites. Tough Mudder is a Delaware limited liability company having its principal place of business at 228 Park Avenue South,

1  New York, New York.  The Court is informed that both Dean and
2  Livingstone reside in the Eastern District of New York.
3     Plaintiff alleges that Defendants' Tough Mudder race is an
4  attempt to replicate Tough Guy.  The Complaint avers that based
5  on the information disclosed by Plaintiff, Defendants designed,
6  developed, advertised, marketed, promoted, and implemented the
7  Tough Mudder race.
8     Tough Mudder has already held races in Pennsylvania,
9  Northern California, and New Jersey.  Its website advertises
10 future races in Texas, Georgia, Pennsylvania, Vermont, Southern
11 California, Colorado, Wisconsin, Virginia, Florida, Seattle,
12 Arizona, Ohio, and Michigan.
13    Plaintiff's Complaint contains thirteen state and federal
14 causes of action.  Dean, Livingstone, and Tough Mudder
15 (collectively "Defendants") filed a Motion to Dismiss.  While
16 considering the Motion to Dismiss, the Court took note of the
17 fact that the Northern California race took place in Calaveras
18 County and, therefore, the Complaint should have originally been
19 filed in the Fresno Division of the Eastern District of
20 California pursuant to L.R. 120(d).  It further became apparent
21 to the Court that the parties had no contacts with the Eastern
22 District of California with the exception of the one Tough
23 Mudder race that took place here in October 2010.  Accordingly,
24 it ordered the parties to brief the venue issue. Both parties
25 filed their briefs on the venue issue on November 30, 2010.
26 ///
27 ///
28 ///

///

## II. OPINION

### A. Legal Standard

#### 1. Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) permits the district court to order transfer of an action sua sponte. Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (approving of lower "court's handling of the improper venue issue ... [as] analogous to the long-approved practice of permitting a court to transfer a case sua sponte under the doctrine of forum non conveniens ... so long as the parties are first given the opportunity to present their views on the issue."); Washington Public Utilities Group v. United States District Court, 843 F.2d 319, 326 (9th Cir. 1987) ("[Section] 1404(a) does not expressly require that a formal motion be made before the court can decide that a change of venue is appropriate").

In the Ninth Circuit, the decision to transfer pursuant to § 1404(a) lies within the discretion of the district court and depends on the facts of each particular case. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). The Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Such factors may

include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. Jones, 211 F.3d at 498-99.

B. Analysis

The parties have virtually no ties to the Eastern District of California and a substantial part of the events giving rise to the claims in this case did not take place in this District. 28 U.S.C. § 1391(b). The only activity that occurred in this District is that one of Defendants' races took place in Bear Valley, in Calaveras County, California. When the case was filed, the race had not even taken place. By the parties' logic, this case could have been properly venued in Pennsylvania, New Jersey, Texas, Georgia, Pennsylvania, Vermont, Southern California, Colorado, Wisconsin, Virginia, Florida, Seattle, Arizona, Ohio, or Michigan. See Upcoming Events, Tough Mudder, http://toughmudder.com/events/ (last visited Dec. 1, 2010).

Neither party resides in this District and neither counsel has offices in this District; the alleged breach of contract and fraudulent behavior occurred in Massachusetts, New York, and/or the United Kingdom; the witnesses and evidence are located in New York;

the ease of access to sources of proof is in the Eastern District of New York; and the cost of litigation is likely to decrease if venue is transferred to Defendants' place of residence, since most of the witnesses and evidence are located there and the parties will not have to travel as far.  While this Court may have more familiarity with the claims based on California law than the Eastern District of New York, the parties could stipulate to transfer venue to the Central District of California where a race will occur in May 2011 and is closer to Plaintiff's and Defendants' counsel who are located in the San Diego area.

The factor that weighs heaviest in favor of transfer is administrative considerations.  The Eastern District of California has the heaviest caseload in the country, over two times larger than the national average and the Eastern District of New York (1136 filings per judge in the Eastern District of California versus 454 filings per judge in the Eastern District of New York). The median time from filing to trial in the Eastern District of New York is 32 months as compared to this District's median time of 42.4 months.  There are currently only five active judges for a district that serves approximately 6.7 million people.  Congress has provided no help.  There has been a judicial vacancy in the District for almost two years, since December 31, 2008.  The district last received a new judgeship in 1990, a temporary position that expired in 2004.  Based on the Administrative Office's 2010 survey, this District is in immediate need of seven additional District Court Judges.  There appears to be no chance that Congress will give this District the Judges it needs at any time in the foreseeable future.

In short, this District is in a crisis mode. Its situation is not like any other Court in the country. Although the parties would prefer to have this case heard by this Court, such a request must be denied. Accordingly, because the parties have virtually no ties to this District, the Court is exercising its discretion to transfer this case. This Court is unfortunately not in a position to allow parties to choose the Eastern District of California as the forum for their lawsuits when venue in other districts, in this case fifteen other districts, is proper.

### III. ORDER

For all the foregoing reasons and, in the interest of justice, this case is transferred to the Eastern District of New York.

IT IS SO ORDERED.

Dated: December 3, 2010

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE