UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

TOUGH GUY LIMITED,

                Plaintiff,

      v.

TOUGH MUDDER LLC, WILL DEAN, and
GUY LIVINGSTONE,

                Defendants.

---

TOUGH MUDDER LLC, WILL DEAN AND
GUY LIVINGSTONE,

                Counterclaimants,

      v.

TOUGH GUY LIMITED and WILLIAM
WILSON,

                Counter-Defendants.

Civil Action No. 10-cv-5620 (JG) (SMG)

**TOUGH GUY LIMITED AND WILLIAM WILSON'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM,
OR IN THE ALTERNATIVE, MOTION TO STRIKE**

SELMAN BREITMAN LLP
Mark D. Shields
Elaine F. Harwell
101 West Broadway, Suite 1330
San Diego, California 92101
Telephone: (619) 564-3600
Facsimile: (619) 564-3636

*Attorneys for Plaintiff and Counter-Defendants
Tough Guy Limited and William Wilson*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT................................................................................................................................1

I.   DEFENDANTS GROSSLY MISCHARACTERIZE THE STATEMENTS
     CONTAINED IN PLAINTIFFS' EMAIL AND BLOG ........................................................1

II.  PLAINTIFFS' EMAIL AND BLOG CONTAIN STATEMENTS OF "PURE
     OPINION" PROTECTED BY THE FIRST AMENDMENT .............................................4

III. PLAINTIFFS' EMAIL AND BLOG DO NOT CONSTITUTE COMMERCIAL
     SPEECH UNDER THE LANHAM ACT............................................................................6

IV.  DEFENDANTS' IRRELEVANT, PREJUDICIAL AND SCANDALOUS
     ALLEGATIONS REGARDING PLAINTIFFS' ALLEGED EMAIL THREAT,
     TAX EVASION AND EMBEZZLEMENT OF CHARITY FUNDS SHOULD BE
     STRICKEN.........................................................................................................................7

V.   CONCLUSION....................................................................................................................9

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abu-Nassar v. Elders Futures Inc.*, 1991 WL 45062 (S.D.N.Y. 1991) ..........................................8

*Board of Trustees v. Fox*, 492 U.S. 469 (1989) .................................................................6

*Central Hudson Gas & Electric Corp. v. Public Service Committee*,
        447 U.S. 557 (1980) ..................................................................................6

*Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*,
        2010 WL 1223590 (E.D.N.Y. Mar. 23, 2010) ..................................................6

*EventMedia Int'l, Inc. v. Time Inc. Magazine Co.*,
        1992 WL 321629 (S.D.N.Y. Oct. 26, 1992) ....................................................3

*G-I Holdings, Inc. v Baron & Budd*, 238 F.Supp.2d 521 (S.D.N.Y 2002) ....................................8

*GEA Westfalia Separator, Inc. v. Greenshift Corp.*,
        2010 WL 2076951 (S.D.N.Y. May 17, 2010) ..................................................7

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ............................................................4

*Gordon & Breach Sci. Publishers S.A. v. America Institute of Physics*,
        859 F.Supp. 1521 (S.D.N.Y. 1994) ..............................................................6

*Hassan v. Spicer*, 2006 WL 228958 (E.D.N.Y. Jan. 31, 2006) ..............................................4

*H & R Industrial, Inc. v. Kirshner*, 899 F.Supp. 995 (E.D.N.Y. 1995) ..................................3, 4

*Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997) ................................................................3

*Ollman v. Evans*, 750 F.2d 970 (D.C.Cir.1984),
        *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985) ...............................4

*Qureshi v. St. Barnabas Hospital Ctr.*, 430 F.Supp.2d 279 (S.D.N.Y. 2006) ...............................4

*Smith v. AVSC International, Inc.*, 148 F.Supp.2d 302 (S.D.N.Y. 2001) ...................................8

*Toto v McMahan, Brafman, Morgan & Co.*,
        1995 WL 46691 (S.D.N.Y. Feb. 7, 1995) .......................................................8

*Treppel v. Biovail Corp.*, 2004 WL 2339759 (S.D.N.Y. Oct. 15, 2004) .....................................6

*In re U.S. Foodservice Inc. Pricing Litigation*,
        75 Fed.R.Serv.3d 721 (D. Conn. 2009) ..........................................................8

*United States Healthcare v. Blue Cross of Greater Philadelphia*,
        898 F.2d 914 (3d. Cir. 1990) .....................................................................7

*United States v. Edge Broadcasting Co.*, 509 U.S. 418 (1993) .............................................6

*Wright v. AARGO Sec. Services, Inc.*,
  2000 WL 264326 (S.D.NY. Mar. 9, 2000) ...........................................................................9

**FEDERAL STATUTES**

Fed. R. Civ. P. 26 ...............................................................................................................................8

Fed. R. Civ. P. 12(f) ...........................................................................................................................7

Plaintiff Tough Guy Limited and Counter-Defendant William Wilson (collectively, "Plaintiffs") respectfully submit this reply memorandum of law in support of Plaintiffs' motion to dismiss Defendants' Counterclaim, or in the alternative, motion to strike.

## PRELIMINARY STATEMENT

As fully discussed in Plaintiffs' moving brief and in this reply brief, Defendants' Counterclaim is legally and factually deficient for numerous reasons and should be dismissed. Defendants attempt to cure the deficiencies in the Counterclaim by inserting into their opposition hyperbolic mischaracterizations of the statements made by Plaintiffs in a February 8, 2010 email and March 3, 2010 blog entry. For example, Defendants opposition contends that the statements in Plaintiffs' email and blog "clearly accuse Dean and Tough Mudder of being engaged in a *criminal enterprise*." This is the type of mischaracterization that Defendants rely upon throughout their Counterclaim and opposition brief to support their claims for false advertising and defamation. Plaintiffs respectfully request that this Court disregard Defendants' mischaracterizations of Plaintiffs' statements and determine the outcome of this motion based on Plaintiffs' actual statements, which are contained in Exhibits B and C of the Counterclaim.

Exhibits B and C indicate that Plaintiffs' email and blog are replete with non-actionable opinions that Defendants have misconstrued in order to assert a baseless Counterclaim against Plaintiffs. Defendants' mischaracterizations of Plaintiffs' statements cannot be used to cure a deficient Counterclaim. For the following reasons, Defendants' Counterclaim fails to state facts sufficient to constitute claims for defamation or false advertising under the Lanham Act. Alternatively, Plaintiffs respectfully request that the Court strike Defendants' irrelevant, prejudicial and scandalous allegations regarding Plaintiffs' alleged tax evasion, charity embezzlement, connections to the mafia and purported email threat to Defendant Will Dean ("Dean").

## ARGUMENT

## I.    DEFENDANTS GROSSLY MISCHARACTERIZE THE STATEMENTS CONTAINED IN PLAINTIFFS' EMAIL AND BLOG

Defendants' assertion that Plaintiffs accused Defendants of being engaged in a "criminal enterprise" is not the only example where Defendants' Counterclaim and/or opposition brief

grossly mischaracterize Plaintiffs' actual statements as set forth in the February 8, 2010 email and March 3, 2010 blog. Indeed, Defendants refer to Plaintiffs' February 3, 2010 email, which Defendants compare to a scene from the movie "The Godfather," as "The Death Threat." Ex. A.[1]

Less dramatic, although just as inaccurate, is the allegation in Defendants' Counterclaim that Plaintiffs accused Dean of "falsifying his resume." ¶ 42.[2] This is untrue. Plaintiffs' actual statement was that Dean "sexes up his CV of being employed by the British Government to chasing terrorists in the Middle East!??" Plaintiffs' statement is not a claim that Dean falsified his resume, but rather a criticism of Dean's biography posted on Tough Mudder's website where Dean describes himself as an Englishman and boasts that he "spent 5 years in the Middle East and South Asia chasing terrorists for the British Government before getting it into his head that an American MBA would be a good thing to do." See *www.toughmudder.com/about-us/*. Defendants mischaracterize Plaintiffs' criticism in a meritless attempt to establish a Counterclaim.

The Counterclaim also alleges that Plaintiffs represented that Defendants' races "will result in Tough Mudder competitors being subject to inherently unsafe conditions" and "increased risk of injury and loss of life." ¶¶ 40, 42. Defendants' opposition brief elaborates further by falsely claiming that Plaintiffs "impugned the basic integrity of Tough Mudder's operations as unsafe and inferior." Defendants allegations, however, take Plaintiffs' comments out of context. Plaintiffs' February 8, 2010, email states:

> ***Speculation*** by Mr. Mouse with Vast Experience
> 1) He could injury and endanger life.
> Ex. B (emphasis added).[3]

These statements, when read in context with Plaintiffs' factual statement that Dean had "no experience" in organizing an obstacle race like Tough Guy, which Defendants do not deny, clearly indicates that Plaintiffs were offering a reasonable opinion, a speculation, that the race, promoted by Defendants as the "most dangerous in the world", "could" be unsafe. Ex. B.

---

[1] All references to Exhibits ("Ex.") are to exhibits attached to Defendants' Counterclaim unless otherwise stated.
[2] All references to "¶___" and "¶¶___" are to Defendants' Counterclaim.
[3] Mr. Mouse is a pseudonym and persona created by Mr. Wilson in regard to Tough Guy.

Furthermore, at the time Plaintiffs made the statements, Defendants had not even conducted a race. As such, Plaintiffs' statements were clearly conjecture and speculation. Plaintiffs' opinion is non-defamatory and non-actionable. "When a defendants' statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals to the reader that what is said is opinion, and not fact." *Levin v. McPhee,* 119 F.3d 189, 196 (2d Cir. 1997).

The Counterclaim also alleges that Plaintiffs' February 8, 2010 email "inherently" suggests that Defendants' "race participants will not only forfeit their entry fees but also have wasted valuable training and traveling time. ¶¶ 41, 42. Defendants' opposition exaggerates further and falsely claims that Plaintiffs stated that "Tough Mudders' races (sic) are likely to be injured, cheated and robbed." The email actually states: "Tough Guy will not allow plagiarising [sic] of its intellectual rights. We will arrive at any pirate event with an injunction which will, I am sure have all the desire effects." ¶ 42. Plaintiffs' statement is not a claim that Defendants "stole Tough Guy's trade secrets" as asserted in Defendants' opposition. That claim was made when Plaintiffs filed the instant action.

Plaintiffs' statement must be read in context with the entire February 8, 2010 email, which states than Dean used "photographs and video taken at Tough Guy™", and "information extracted from the latest Tough Guy™ website" to market ToughMudder.com on the internet. See *H & R Indus., Inc. v. Kirshner,* 899 F. Supp. 995, 1009 (E.D.N.Y. 1995); see also Ex. B. Defendants do not deny, either in the Counterclaim or in their opposition, that they did not engage in these activities. Thus, Plaintiffs' statement is merely a representation that Plaintiffs intended to protect their rights by legal means. Such a statement is not actionable under the Lanham Act or a defamation claim. See *EventMedia Int'l, Inc. v. Time Inc. Magazine Co.,* 92 CIV. 0502 (JFK), 1992 WL 321629 * 3 (S.D.N.Y. Oct. 26, 1992).

The Counterclaim also mischaracterizes Plaintiffs' March 3, 2010 blog by alleging that Plaintiffs stated that Defendants "will take 'gullible competitors' entry fees' and not provide competitors with the consideration they bargained for, a muddy obstacle course race." ¶ 49. The blog actually states, "He apparently has a dream that no publicity is bad publicity and that his empty pot will fill with shekels of gullible competitors' entry fees which he can then do what he

likes with." Again, this is a non-actionable statement of opinion and hyperbole, which Defendants have taken out of context. *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006).

In sum, Defendants mischaracterize, misquote and misconstrue the statements contained in Plaintiffs' email and blog in an attempt to assert a valid counterclaim. Plaintiffs' email and blog, however, are protected as expressions of opinion. As such, Defendants' Counterclaim must be dismissed.

## II.   PLAINTIFFS' EMAIL AND BLOG CONTAIN STATEMENTS OF "PURE OPINION" PROTECTED BY THE FIRST AMENDMENT

A statement that is an expression of opinion is entitled to the absolute protection of the First Amendment. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). Under both New York and federal law, statements of "pure opinion" are not actionable as defamation. *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006).

Statements of opinion accompanied by a recitation of the facts on which they are based or statements that do not imply the existence of undisclosed underlying facts constitute pure opinion and are not actionable. *Id.* at 288. "To constitute pure opinion, the statement must either include a recitation of the facts upon which it is based, or at least not imply that it is based upon undisclosed facts; otherwise, the statement will be deemed a "mixed opinion," which is actionable based on the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Hassan v. Spicer,* 05-CV-1526 (FB)(LB), 2006 WL 228958 (E.D.N.Y. Jan. 31, 2006) *aff'd,* 216 F. App'x. 123 (2d Cir. 2007) (citations omitted). The issue of whether a statement expresses fact or opinion is a question for the Court. *H & R Indus., Inc.,* 899 F. Supp. at 1009.

In general, the Court should consider whether or not in the entire context and circumstances of the communication the average person reading the communication would understand it to be a statement of fact or opinion. *Id.,* at 1010. If the statement is deemed an expression of opinion it is protected unless it implies that it is based upon undisclosed facts

- 4 -

justifying the opinion. *Id.* In that case the statement may be actionable as a "mixed opinion." *Id.*

Here, Plaintiffs' February 8, 2010 email and March 3, 2010 blog each contain a recitation of specific facts upon which Plaintiffs' opinions are based. Indeed, Plaintiffs' email contains a lengthy and detailed timeline of facts, undisputed by Defendants, that serve as the basis for Plaintiffs' opinions regarding Dean. Ex. B. Similarly, Plaintiffs' March 3, 2010 blog sets forth a recitation of facts including Dean's use of his Harvard field study to survey the workings and financial structures of Tough Guy, Dean's establishment of a website entitled toughmudder.com, and Dean's use of photographs and video of Plaintiffs' Tough Guy event to promote Defendants' Tough Mudder races. It is upon these facts, which Defendants do not dispute, that Plaintiffs conclude and opine that Dean is a plagiarist and a scoundrel. After considering the entire context of Plaintiffs' email and blog, it is apparent that these communications no doubt constitute statements of "pure opinion." Accordingly, Plaintiffs' statements are entitled to the absolute protection of the First Amendment.

Defendants contend that Plaintiffs' February 8, 2010 email is a statement of "mixed opinion" based solely on Plaintiffs' statement that "Tough Guy will not allow plagiarizing (sic) of its intellectual rights. We will arrive at any pirate event with an injunction which will, I am sure have all of the desired effects." ¶ 41. Defendants illogically claim that this statement would be understood by any reasonable reader to mean that Plaintiffs have "undisclosed proof" for Plaintiffs' assertion of an intent to enforce its legal rights. Defendants' contention is without merit. Defendants neglect to mention that the facts which serve as the basis for Plaintiffs' statement are clearly set forth in the email and include the fact that Dean produced a race with a nearly identical name, Tough Mudder, which he advertised on toughmudder.com, and that Dean used photographs and video of Plaintiffs' Tough Guy event to market his competing race. Ex. B. Defendants also fail to consider Plaintiffs' statement that Plaintiffs would be agreeable to license parts of Tough Guy and permit the use of photographs and videos of Tough Guy for a small fee per competitor had Plaintiffs been asked to do so. Ex. B. These comments underscore the basis for Plaintiffs' alleged statement regarding the intention to seek legal redress. Defendants' contention that the email and blog represent mixed opinion is without merit as all facts

underlying the statement are set forth in the email.

Defendants also contend that Plaintiffs' statements, even if pure opinion, are actionable in that they purportedly include accusations of "criminal activity." Defendants' contention is without merit. *Treppel v. Biovail Corp.*, 03 CIV. 3002 (PKL), 2004 WL 2339759 (S.D.N.Y. Oct. 15, 2004) *on reconsideration,* 03CIV3002PKL, 2005 WL 427538 (S.D.N.Y. Feb. 22, 2005) ("Though the parties debate whether the statement accuses plaintiff of criminality . . . the key inquiry is once again whether the statement may be reasonably understood by the ordinary reader as implying the assertion of an undisclosed fact.) As stated, Plaintiffs' email and blog disclose all facts upon which Plaintiffs' opinions are asserted. As such, Defendants' claims for defamation must be dismissed.

## III. PLAINTIFFS' EMAIL AND BLOG DO NOT CONSTITUTE COMMERCIAL SPEECH UNDER THE LANHAM ACT

Congress intended the Lanham Act to extend only to false and misleading speech that is encompassed within the commercial speech doctrine developed by the United States Supreme Court. *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994) (citing *United States v. Edge Broadcasting Co.,* 509 U.S. 418, 113 S.Ct. 2696, 2703, 125 L.Ed.2d 345 (1993); *Board of Trustees v. Fox,* 492 U.S. 469, 477, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989); *Central Hudson Gas & Electric Corp. v. Public Service Comm.,* 447 U.S. 557, 562-63, 100 S.Ct. 2343, 2349-50, 65 L.Ed.2d 341 (1980). The definition of commercial speech most frequently advanced by the Court, and followed by the Second Circuit, is "*speech proposing a commercial transaction.*" *Id.,* at 1537 (citations omitted) (emphasis in original.) Indeed, to constitute commercial speech a statement must be made "for the purpose of influencing consumers to buy defendant's goods or services." *Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, 09-CV-0077 DLI JMA, 2010 WL 1223590 (E.D.N.Y. Mar. 23, 2010).

Defendants contend in their opposition that Plaintiffs' email and blog were made for the "express purpose" of influencing consumers to participate in Plaintiffs' Tough Guy event. Defendants' opposition, however, is devoid of any citation to an allegation in the Counterclaim that supports this contention. Defendants' opposition brief, likewise, fails to identify any fact

supporting the contention that Plaintiffs' email and blog were intended to increase the ranks of Tough Guy competitors. The fact is, Plaintiffs' February 8, 2010 email and March 3, 2010 blog are completely lacking in any advertising or promotional messages intended to advance Plaintiffs' business. The communications, in substance, do not invite consumers to take part in Plaintiffs' Tough Guy event. See, e.g. *GEA Westfalia Separator, Inc. v. Greenshift Corp.*, 09 CIV. 7686 (LMM), 2010 WL 2076951 (S.D.N.Y. May 17, 2010).

In sum, Plaintiffs' email and blog clearly do not propose a commercial transaction and were not made for the purpose of generating increased entries in Plaintiffs' Tough Guy event. Therefore, Plaintiffs' email and blog do not constitute commercial speech and cannot be the basis for a claim under the Lanham Act.

Defendants cite to a Third Circuit opinion, *United States Healthcare v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir. 1990), for the definition of commercial speech. The definition differs from that used by the Second Circuit as set forth above. Nonetheless, assuming the Court were to adopt the definition in *United States Healthcare*, Plaintiffs' email and blog do not constitute commercial speech. Under *United States Healthcare*, the communication must be an advertisement. This requirement is not satisfied. Neither Plaintiffs' email nor the blog at issue are advertisements for Plaintiffs' Tough Guy event. Defendants' conclusory statement in their opposition does not support Defendants' contention that Plaintiffs' email and blog promote "Tough Guy's races as superior to those of Tough Mudder." Indeed, Plaintiffs' email and blog do not tout the relative merits of Plaintiffs' Tough Guy event over Defendants' Touch Mudder races. *Id.*, at 934. As such, Plaintiffs' statements do not constitute commercial speech.

IV. **DEFENDANTS' IRRELEVANT, PREJUDICIAL AND SCANDALOUS ALLEGATIONS REGARDING PLAINTIFFS' ALLEGED EMAIL THREAT, TAX EVASION AND EMBEZZLEMENT OF CHARITY FUNDS SHOULD BE STRICKEN**

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may "order stricken from any pleading any ... redundant, immaterial, impertinent, or scandalous matter." Indeed, scandalous allegations of the nature at issue herein are often stricken from the pleadings in order

to purge the court's files and protect the subject of the allegations. *G-I Holdings, Inc. v Baron & Budd*, 238 F.Supp. 2d 521, 555 (S.D.N.Y. 2002); *Toto v McMahan, Brafman, Morgan & Co.*, 1995 WL 46691 *16, Fed Sec L Rep P 98, 639 (S.D.N.Y. Feb. 7, 1995) (Frequently courts will strike references that have criminal overtones); see also *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 318 (S.D.N.Y. 2001); and *In re U.S. Foodservice Inc. Pricing Litig.*, 75 Fed. R. Serv. 3d 721 (D. Conn. 2009).

Here, Defendants' Counterclaim asserts vague and unsubstantiated allegations that Plaintiffs cheated on taxes and embezzled charity funds. ¶ 26. Defendants also accuse Plaintiffs of threatening Dean's life via email. ¶¶ 29 – 34. These allegations are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26; *Abu-Nassar v. Elders Futures Inc.*, 1991 WL 45062 (S.D.N.Y. 1991) ("discovery must be related to a valid cause of action in order to be relevant.") Furthermore, Defendants' Counterclaim overtly alleges that Plaintiffs violated applicable tax, charity and criminal laws of the United Kingdom. Defendants' allegations go well beyond mere references with "criminal overtones." See *Toto,* 1995 WL 46691 *16. Indeed, Defendants' allegations are all serious criminal accusations, none of which are germane to this action. As such, Defendants' allegations should be stricken.

Defendants allege that Plaintiffs' offending statements were made with malice and that the allegations regarding Plaintiffs' purported cheating on taxes and embezzlement of charity funds support this contention. ***This claim of relevancy, however, is directly contradicted by Defendants' Counterclaim, which correctly states that the impetus for Plaintiffs' February 3, 2010 email to Dean was the fact that Plaintiffs were "upset that Dean had created Tough Mudder*."* ¶ 5.

Furthermore, Defendants' argument that malice is supported by Defendants' scandalous and prejudicial allegations of tax cheating and charity embezzlement was rejected by Magistrate Judge Steven M. Gold. On February 15, 2011, Defendants propounded a First Set of Requests for Admissions, First Set of Requests for Documents and Second Set of Interrogatories (collectively, the "Discovery") all of which sought information regarding Plaintiffs' relationships with and payments to various charities. On March 17, 2011, Plaintiffs moved for a protective

order forbidding inquiry into the matters asserted in Defendants' Discovery.

On March 28, 2011, Magistrate Judge Steven M. Gold granted Plaintiffs' motion for a protective order, thereby precluding Defendants from conducting discovery regarding Plaintiffs' affiliations and relationships with various charities. (See attached Transcript of Civil Cause for Discovery Reference ("Transcript") attached hereto as Ex. 1, 6:15 – 7:8). Judge Gold reasoned that proof of malice may be "strengthened if a threat to reveal something or an accusation of wrongdoing turns out to be based upon actual misconduct, but it's capable of provoking malice whether it's based on actual misconduct or not. *In fact, some would argue that a false accusation is more provocative than an accurate one*." Transcript, Ex. 1, 6:20 – 7:1.

Judge Gold ruled that Defendants' discovery relating to Plaintiffs' affiliations with various charities was very "far afield from the primary claims and very intrusive in that it goes into the tax status and charitable preferences of the plaintiff *which have nothing to do with the essential claims at issue*." Transcript, Ex. 1, 7:4 – 8. Judge Gold's ruling is well-founded. See, e.g. *Wright v. AARGO Sec. Services, Inc.*, 99 CIV 9115 CSH, 2000 WL 264326 (S.D.N.Y. Mar. 9, 2000) (denying motion to compel discovery found to be too far afield from the claims at issue and where the probative value of evidence regarding motive was outweighed by the potential prejudice to defendant and the possibility that permitting the discovery could lead to incriminating statements by the defendant on an irrelevant matter.)

In the event the Court denies Plaintiffs' motion to dismiss, the Court should strike Defendants' irrelevant, prejudicial and scandalous allegations regarding Plaintiffs' alleged cheating on taxes, embezzlement of charity funds and allegations regarding Plaintiffs' purported email threat and "connections to the mafia." ¶¶ 26, 29 – 34.

## V.   CONCLUSION

Defendants' claims for defamation and false advertising under the Lanham Act fail to state claims upon which relief may be granted. Specifically, Defendants' defamation claim fails as Plaintiffs' email and blog constitute "pure opinion" and are protected speech. Defendants' false advertising claim fails as it is not premised on commercial speech. For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Defendants' Counterclaim in its

entirety.

Alternatively, Plaintiffs respectfully request that the Court strike from the Counterclaim Defendants' immaterial, prejudicial and scandalous allegations set forth in paragraphs 26 and 29 – 34 regarding allegations of tax evasion, charity fund embezzlement, connections to the mafia and Plaintiffs' purported email death threat.

Respectfully Submitted,

DATED: March 31, 2011          SELMAN BREITMAN LLP

By: _____ /s/ *MARK D. SHIELDS* _____
　　　　　MARK D. SHIELDS
　　　　　ELAINE F. HARWELL
　　　101 West Broadway, Suite 1330
　　　San Diego, California 92101
　　　Telephone: 619-564-3600
　　　Email: mshields@selmanbreitman.com
　　　Email: eharwell@selmanbreitman.com
　　　*Attorneys for Plaintiff and Counter-Defendants*
　　　*Tough Guy Limited and William Wilson*

# Exhibit 1

1                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
2

3  ------------------------------------X
                               :
4  TOUGH GUY LIMITED,
                              :   10-CV-5620
5            Plaintiff,       :
        v.                  :
6                              :   225 Cadman Plaza East
  TOUGH MUDDER, LLC, et al.,      :   Brooklyn, New York
7                              :
          Defendants.      :   March 28, 2011
8  ------------------------------------X

9      TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
           BEFORE THE HONORABLE STEVEN M. GOLD
10            UNITED STATES MAGISTRATE JUDGE

11
  APPEARANCES:
12

13  For the Plaintiff:     MARK D. SHIELDS, ESQ.

14

15

16
  For the Defendant:     MATTHEW PHILIP SIBEN, ESQ.
17

18

19

20

21  Court Transcriber:      SHARI RIEMER
                        TypeWrite Word Processing Service
22                       211 N. Milton Road
                       Saratoga Springs, New York 12866
23

24

25

  Proceedings recorded by electronic sound recording, transcript
  produced by transcription service

2

1   (Proceedings began at 10:03 a.m.)

2           THE COURT: This is Civil Cause for Discovery

3   Conference, Tough Guy Limited v. Tough Mudder, 10--CV-5620.

4           Who is on for the plaintiff?  This is Judge Gold.

5           MR. SHIELDS:  Good morning, Your Honor.  This is

6   Mark Shields.

7           THE COURT: Who is on for the defendant?

8           MR. SIBEN:  Good morning, Your Honor.  This is Matt

9   Siben of Dietrich Siben & Thorpe.

10          THE COURT: Okay.  I have before me an exchange of

11  letters pursuant to which the plaintiff is seeking a

12  protective order with respect to discovery demands propounded

13  by the defendant.  Can you tell me first, Mr. Shields, what it

14  is that the plaintiff is bring this lawsuit about?

15          MR. SHIELDS: Yes, Your Honor.  Plaintiff brought the

16  lawsuit to briefly summarize in 2008 Will Dean was performing

17  a field study while he was a graduate student at Harvard.  His

18  field study concerned the business of Tough Guy Limited which

19  operates an obstacle course in the U.K.  He acquired during

20  that field study confidential information and trade secrets.

21  He signed a confidentiality agreement promising not to

22  disclose or use that information.  Several months after he

23  completed that Harvard field study in 2008 he began marketing

24  a competitor race in violation of his representations to

25  plaintiff and later formed the LLC Tough Mudder, LLC which is

3

1  also defendant.  It's primarily a misappropriation of trade
2  secrets case, Your Honor, that plaintiff brings before this
3  Court.
4          THE COURT: What's the nature of the counterclaim,
5  Mr. Sieber [sic]?
6          MR. SIBEN: Yes, Your Honor.  Mr. Siben.
7          THE COURT: Excuse me.  I apologize. I can't read my
8  own handwriting.
9          MR. SIBEN: The counterclaim, Your Honor, is based on
10  the fact that Mr. Wilson made defamatory remarks we believe
11  with malicious intent accusing in public Mr. Dean of stealing
12  the trade secrets and also of committing fraud.
13          THE COURT: Mr. Wilson is plaintiff's principal?
14          MR. SHIELDS:  Correct, Your Honor.
15          THE COURT: What's the scope of the protective order
16  you're seeking, Mr. Shields?
17          MR. SHIELDS: Well, defendant Tough Mudder propounded
18  a litany of discovery, [inaudible], document requests and
19  interrogatories all relating to plaintiff's relationship and
20  affiliations with various charities in the U.K.  It's
21  plaintiff's contention that these [inaudible], interrogatories
22  and document requests have no bearing whatsoever on the
23  parties claims or defenses in this case, that they're
24  irrelevant to this case, and therefore pursuant to Federal
25  Rule of Civil Procedure 2026 --

4

1           THE COURT: Right.

2           MR. SHIELDS: -- which issues a protective order

3   precluding defendants from conducting discovery in that area

4   of inquiry.

5           THE COURT: Thank you. What's the procedural posture

6   of the case, Mr. Shields?

7           MR. SHIELDS: Plaintiff and defendants have pending

8   cross motions for motions to dismiss, the hearing on which is

9   set for April 29th.

10          THE COURT: Before Judge Gleeson?

11          MR. SHIELDS: Correct. The parties just exchanged

12  within the past ten days or so initial disclosures.

13          THE COURT: And we have a -- we had an initial

14  conference in this case or did we adjourn it -- we adjourned

15  the initial conference that had originally been scheduled for

16  March 23rd in light of the upcoming Rule 12 arguments; correct?

17          MR. SHIELDS: That's correct, Your Honor.

18          THE COURT: Mr. Siben, did you -- I believe your

19  contention is that your client accused the plaintiff of these

20  violations in connection with these charities or not?

21          MR. SIBEN: Yes, Your Honor.

22          THE COURT: Is it in writing?

23          MR. SIBEN: No, it's not in writing, Your Honor.   The

24  parties -- when Mr. Dean was working --

25          THE COURT: So, in other words, anybody who made an

5

1 allegation involving a claim of malice could under your theory
2 contend that he confronted or criticized or threatened or made
3 some stray remark to his adversary and then take discovery
4 about that person's private or financial life without any
5 showing other than that allegation if they allege a
6 counterclaim that has --

7         MR. SIBEN: Your Honor, this is not --

8         THE COURT: -- if they allege a counterclaim that has
9 malice in it.

10         MR. SIBEN: Well, it is a counterclaim that does have
11 malice in it but it's not a naked allegation, Your Honor. It
12 is well founded. We do not believe this is a fishing
13 expedition. At the time of the confrontation there is emails
14 and [inaudible] back and forth that were documented.

15         THE COURT: Is the part of the defense to the malice
16 claim true?

17         MR. SIBEN: But it is the impetus for the animosity
18 between the parties and when Mr. Dean made the allegation and
19 confronted Mr. Wilson about it he had a very good faith basis
20 for doing so and we have a good faith basis that we'd be
21 willing to discuss and share with the other side and with Your
22 Honor for what Mr. Dean's basis was for that confrontation at
23 that time.

24         THE COURT: Okay. First of all, I assume you're
25 defending the defamation claim on the grounds that the --

6

1  excuse me.  I assume that your assertion that the remarks were
2  defamatory includes the allegation that they were untrue.
3  Correct?

4            MR. SIBEN: That is certainly true, yes, Your Honor.
5            THE COURT: And the plaintiff will be defending Mr.
6  Shields [sic] on the ground that they're true; correct?
7            MR. SHIELDS: Yes, Your Honor, in part.
8            THE COURT: But you don't -- you're not conceding
9  their falsity and then defending on the grounds of lack of
10 malice.  You're contending that they're accurate.  Am I --
11           MR. SHIELDS: Primarily, yes.  In addition to that,
12 the statements that were made don't rise to the level of being
13 defamatory statements but that's not here nor there for
14 purposes of this -- for this protective order.

15           THE COURT: Well, I believe that this discovery is
16 very far afield and I am granting the motion for the
17 protective order at least for the time being.  It's far afield
18 for several reasons.  First of all, proof of malice can be
19 inferred from the mere fact if it's believed that the
20 defendant made the allegation in the first place.  I
21 understand that the argument of malice is strengthened if a
22 threat to reveal something or an accusation of wrongdoing
23 turns out to be based upon actual misconduct but it's capable
24 of provoking malice whether it's base don actual misconduct or
25 not. In fact, some would argue that a false accusation is more

7

1  provocative than an accurate one. So the defendant's ability
2  to develop its case on malice is not substantially
3  compromised.

4       On the other hand, the nature of the discovery is
5  far afield from the primary claims and very intrusive in that
6  it goes into the tax status and charitable preferences of the
7  plaintiff which have nothing to do with the essential claims
8  at issue.

9       Finally, if the case survives to the point where the
10 allegations of defamation survive the defenses of truth and
11 non defamatory character we can then readdress the question of
12 malice.

13      I'll hear from you after the motions to dismiss are
14 decided. Are you ready for an initial conference or do you
15 want to schedule one now regardless of the outcome of the
16 motions?

17      MR. SHIELDS: We'll defer to the Judge's preference
18 on this. Like I said, there's cross motions pending on April
19 29ᵗʰ, whatever the Court would prefer to do, set the initial
20 conference or postpone it until after the hearings is fine by
21 plaintiff, Your Honor.

22      THE COURT: Mr. Siben.

23      MR. SIBEN: We would agree, Your Honor, it's probably
24 best to defer to Your Honor's preference.

25      THE COURT: Then we'll wait and see how Judge Gleeson

8

1  decides the motions.  If you have another discovery dispute
2  you can write me a letter about it.
3              MR. SHIELDS: Thank you, Your Honor.
4              THE COURT: Have a good day.
5                        *  *  *  *  *

9

1     I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                         Shari Riemer

7   Dated:   March 29, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2011, I filed the foregoing TOUGH GUY LIMITED AND WILLIAM WILSON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM, OR IN THE ALTERNATIVE, MOTION TO STRIKE with the Clerk of the Court using the CM/ECF system, and served all parties via ECF.

DATED:  March 31, 2011          SELMAN BREITMAN LLP

                                By:    /s/ *ANA OREJEL*
                                       ANA OREJEL
                                       Secretary to Mark D. Shields

                                101 W. Broadway, Suite 1330
                                San Diego, California 92101
                                Telephone: 619-564-3600
                                Email: mshields@selmanbreitman.com
                                Attorneys for Plaintiff TOUGH GUY LIMITED